UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHELLE OSBORNE,

   Plaintiff,

 v.

TRACY POLICE DEPARTMENT, et al.,

   Defendants.

No. 2:20–cv–01805–JAM–KJN PS

FINDINGS AND RECOMMENDATIONS; ORDER STAYING CASE

(ECF No. 22.)

Plaintiff, proceeding without counsel,[1] alleges multiple causes of action against numerous officers of the Tracy Police Department. (ECF No. 21.) Plaintiff's claims center on allegations that Officer Jose Calvache used excessive force against her, in violation of her Fourth Amendment rights, and other officers conspired to cover up Calvache's acts. Currently before the court is defendants' third motion to dismiss for failure to state a claim or, in the alternative, motion for summary judgment. (ECF Nos. 22, 24.) Plaintiff opposes dismissal of her claims, opposes summary judgment, and submits evidence. (ECF Nos. 23, 27.) The court recommends:

 I. Summary judgment be granted on plaintiff's excessive force claim under 42 U.S.C. Section 1983, as asserted against defendant Jose Calvache; and

 II. The remainder of plaintiff's claims be dismissed for failure to state a claim, and leave to amend be denied.

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(21) for the issuance of findings and recommendations. See Local Rule 304.

1

**BACKGROUND**[2]

Plaintiff's second amended complaint alleges that on June 14, 2019, Officer Jose Calvache of the Tracy Police Department ("P.D.") used excessive force against her, in the presence of Tracy P.D. Sergeant Hicks and Officers Clayton, Acevedo, and Perry. (ECF No. 21 at 12.) These Tracy P.D. officers responded to a domestic disturbance call concerning plaintiff and her then roommate. (Id.) Plaintiff alleges that while the officers were talking with her, Officer Calvache "out of anger" grabbed her wrist and arm extremely hard and violently twisted her arm almost pulling "it off [her] shoulder and body." (Id. at 13.) Further, plaintiff alleges she posed no threat to the officers as she was neither attacking nor threatening the officers. (Id.) Plaintiff states she suffered bruises on her wrist and her arms, and experienced extreme pain in both her arm and shoulder. (Id.) Plaintiff alleges she blacked out at points during this (and subsequent) events, and after a while the officers left the apartment complex. (Id. at 14.)

At some point thereafter, an unnamed assailant allegedly sexually assaulted plaintiff. (Id.) When plaintiff called Tracy P.D. for help, no officers responded, and dispatchers Umpad, Sheivin, Allen, and Quiros allegedly ignored plaintiff's pleas and declined to assist her. (Id. at 15.) Plaintiff then went to a friend's apartment, eight Tracy P.D. Officers arrived (Sgt. Hicks, Sgt. Muir, and Officers Calvache, Clayton, Weyant, Perry, Azevedo, and Pederson), and plaintiff was arrested. (Id.) Officer Clayton and another unnamed officer drove plaintiff to the Emergency Room, and then to jail. (Id. at 16.) Officer Clayton wrote the incident report, which was signed by both Sgts. Hicks and Muir, which did not mention Calvache's use of force. (Id.)

Plaintiff filed claims in California superior court, and on September 8, 2020, defendants removed to this court. (See ECF No. 1.) Defendants moved to dismiss, and plaintiff filed a first

---

[2] The facts herein are from the second amended complaint. (ECF No. 21.) These facts are construed in the light most favorable to plaintiff—the non-moving party. Faulkner v. ADT Sec. Servs., 706 F.3d 1017, 1019 (9th Cir. 2013). However, though the court repeats some of plaintiff's conclusory statements from the complaint, these assertions are ultimately not relied upon. "Conclusory assertions" cannot be relied upon to overcome a motion to dismiss for failure to state a claim. Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009) (In deciding a motion to dismiss for failure to state a claim, the court need not rely on "legal conclusions merely because they are cast in the form of factual allegations.").

amended complaint ("1AC") within 21 days.  (ECF Nos. 4, 8.)  Defendants again moved to dismiss.  (ECF No. 12.)  After briefing and a hearing, the undersigned recommended: (i) defendants' second motion to dismiss be granted; (ii) plaintiff's state-law, Title VII, and Monell claims be dismissed with prejudice; and (iii) plaintiff be allowed to amend her Section 1983 claims against the individual officers using the pleading standards set forth by the court.  (ECF No. 18 at 11.)  The district court adopted the recommendations in full.  (ECF No. 20.)

Plaintiff filed a second amended complaint ("2AC"), restating many of the same state-law claims as the 1AC, but with the phrase "42 U.S.C. Section 1983" appended.  (ECF No. 21.)  In total, the 2AC attempts to assert 17 claims under Section 1983:  unlawful detention, false arrest, "assault & battery/excessive force," malicious prosecution, racial profiling, sexual assault, intentional infliction of emotional distress, conspiracy, retaliatory prosecution, "racially motivated and conducted," breach of contract, "intentional negligence," invasion of privacy, defamation, supervisory liability, bystander liability, and "human rights."  (Id.)  The 2AC also lists two new claims under the California Unruh Act and Bane Act.  (Id. at 8.)

Defendants moved to dismiss for a third time.  (ECF No. 22.)  Plaintiff filed an opposition spanning a total of 55 pages.  (ECF No. 23.)  Defendants replied, and requested in the alternative that the court grant summary judgment on plaintiff's excessive force claim against Calvache, and submitted Calvache's body-cam footage.  (ECF No. 24.)  Plaintiff opposed summary judgment, objected to defendants' evidence, and submitted additional evidence of her own.  (ECF No. 27.)

**DISCUSSION**

**Legal Standards - Motion to Dismiss**

A claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Rule 12(b)(6).[3]  To avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Thus, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to

---

[3] Citation to the "Rule(s)" are to the Federal Rules of Civil Procedure, unless otherwise noted.

relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the well-pled factual allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the complaint in the light most favorable to the plaintiff. See Papasan v. Allain, 478 U.S. 265, 283 (1986). The court is not, however, required to accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations." Paulsen v. CNF Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).

A complaint must not contain lengthy introductions, argument, speeches, explanations, stories, griping, evidence, summaries, charts, notes, e-mails, and the like. See McHenry v. Renne, 84 F.3d 1172, 1176-78 (9th Cir. 1996). Further, the practice of "incorporat[ing] each preceding paragraph, regardless of relevancy [has] been harshly criticized as a form of 'shotgun pleading' that violates Rule 8's requirement of a 'short and plain statement' and interferes with the court's ability to administer justice." Destfino v. Kennedy, 2008 WL 4810770 1 at *3 (E.D. Cal. Nov. 3, 2008). However, the court must construe a pro se pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in their complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007). Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

**Legal Standards – Summary Judgment**

Rule 56(b) allows for a party to move for summary judgment (i.e. judgment as a matter of law) "at any time until 30 days after the close of all discovery." A party moves for summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Rule 56(a). Summary judgment is proper when the movant demonstrates that no genuine issue exists as to the material facts of the claim. Id. A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the suit under the governing law. United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A shifting burden of proof governs motions for summary judgment. Nursing Home Pension Fund, Local 144 v. Oracle Corp., 627 F.3d 376, 387 (9th Cir. 2010).

Initially, the party seeking summary judgment bears the burden identifying the legal basis for its motion and the portions of the declarations, pleadings, and discovery that support its position. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). In claims where the moving party will not bear the burden of proof on an issue at trial, the movant may prevail by "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. If a moving party fails to carry its burden at this step, then the opposing party "has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

If the moving party meets this initial burden, the opposing party must then establish that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A genuine dispute of material fact can be demonstrated by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1)(A)-(B); see also Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) ("The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing there is a genuine issue for trial.").

The parties are obliged to identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact. Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010); see also Rule 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). In resolving a motion for summary judgment, the evidence of the opposing party is to be believed, and all justifiable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable. Id. Further, a motion for summary judgment may not rely on "the mere existence of a scintilla of evidence" (Anderson, 477 U.S. at 253); evidence that is "'merely colorable' or 'is not significantly probative" (Anderson, 477 U.S. at 249-50); "some metaphysical doubt as to the material facts" (Matsushita, 475 U.S. at 586); or a party's "conclusory statement [regarding] a genuine issue of material fact, without evidentiary support[.]" (Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1167 (9th Cir. 2002)). Moreover, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56(c)(2).

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).

**I. Excessive force claim against Officer Calvache.**

**Legal Standards – Section 1983 Excessive Force**

Title 42 U.S.C. Section 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" against a person acting "under color of any statute, ordinance, regulation, custom, or usage." Gomez v.

Toledo, 446 U.S. 635, 639 (1980). "Section 1983 is not itself a source of substantive rights; rather it provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393–94 (1989). Thus, to state a claim for relief under Section 1983, a plaintiff must allege that the defendant acted under color of state law; and caused a plaintiff to be deprived of a right secured by the Constitution or laws of the United States. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009).

An officer "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa Cty., 693 F.3d 896, 915 (9th Cir. 2012) (quoting Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978)). The causation inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

The inquiry into an excessive force claim under Section 1983 "begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham, 490 U.S. at 394. A claim of excessive force to effectuate an arrest is analyzed under a Fourth Amendment objective reasonableness standard. Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. To determine whether force used was "objectively reasonable," the court balances the extent of the intrusion on the individual's rights against the government's need for force under the circumstances, paying "careful attention to the facts and circumstances of each particular case." Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002) (quoting Graham, 490 U.S. at 396); accord Byrd v. Phoenix Police Department, 885 F.3d 639, 642 (9th Cir. 2018).

///

For the extent of the intrusion, courts have long held that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (citations omitted). A single push to the shoulder without physical injury is a minimal amount of force that does not rise to the level of a constitutional violation. See, e.g., Arrieta v. County of Kern, 161 F. Supp. 3d 919, 928 (E.D. Cal. 2016). Officers may use compliance techniques to move or handcuff noncompliant individuals, so long the force used is minimal and controlled in a manner designed to limit injuries. Forrester v. City of San Diego, 25 F.3d 804, 807-08 (9th Cir. 1994) (compliance techniques on abortion protestors that resulted in bruises, pinched nerve, and a broken wrist were objectively reasonable where they failed to comply with officers requests); see also Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 921-22 (9th Cir. 2001) (finding objectively reasonable an officer's forceful grab of a uncooperative plaintiff's arm to handcuff her when the plaintiff could not present evidence of resulting injuries). However, when an individual is engaged in mere passive resistance, use of non-trivial force has been held to be unlawful. Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013); see, e.g., Bonilla-Chirinos v. City of West Sacramento, 2017 WL 3173004 1 at *5 (E.D. Cal. July 26, 2017) (applying Gravelet-Blondin to determine that the officer's violent grab and twist of an individual's arm behind her back to apply handcuffs was enough to create a triable issue of fact); Coe v. Schaeffer, 2016 WL 2625994 at *6-7 (E.D. Cal. May 16, 2016) (the officer's forcible grab of plaintiff's arm to remove her from a room when she posed no threat to the officers, only passively resisted by refusing to leave the room, and submitted photographs showing bruising on her arms was found to be unreasonable).

After assessing the quantum of force used against the plaintiff, the court must also "measure the governmental interests at stake by evaluating a range of factors." Davis v. City of Las Vegas, 478 F.3d 1048, 1054 (9th Cir. 2007). In evaluating the government's interest, the court considers "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; accord Cortesluna v. Leon, 979 F.3d 645, 652 (9th Cir. 2020)).

**Analysis**

A. <u>The 2AC sufficiently states a claim for excessive force against Officer Calvache.</u>

Plaintiff's pleadings are not a model of clarity, and it is difficult at times to make out the scope of her claims. Viewing the pleadings in the light most favorable to plaintiff, the court finds the 2AC sufficiently states an excessive force claim under Section 1983 against Officer Calvache.

The 2AC pleads enough facts to suggest that Officer Calvache's allegedly used more than minimal force when he encountered plaintiff on the domestic-disturbance call. (ECF No. 21 at 13.) Contrary to the plaintiffs in <u>Arrieta</u> and <u>Arpin</u>, the plaintiff here does not allege a mere push or shove, nor does she fail to allege resulting injuries. <u>Arrieta</u>, 161 F. Supp. 3d at 928; <u>Arpin</u>, 261 F.3d at 921-22. Instead, the 2AC alleges a violent grab and twist of plaintiff's arm and wrist, causing her great pain, resulting in bruises all over. <u>See, e.g.</u>, <u>Bonilla-Chirinos</u>, 2017 WL 3173004 at *5; <u>Coe</u>, 2016 WL 2625994 at *6-7.

As to the government's interest, Officer Calvache's use of force, as alleged in the 2AC, would not have been objectively reasonable. The officers were called to plaintiff's apartment because plaintiff was the potential victim of a domestic dispute, not the perpetrator of a crime. (ECF No. 21 at 12-15.) Further, nothing in the pleadings indicates plaintiff posed any threat to the officers. Although plaintiff was admittedly upset, "completely out of it," and used profanity during the encounter, the 2AC alleges plaintiff did not physically threaten Officer Calvache or any of the other officers at the scene.[4] (ECF No. 21 at 13-14); <u>see, e.g.</u>, <u>Coe</u>, 2016 WL 2625994 at *6-7 (noting that the plaintiff posed no reasonable threat to the officers when there was no evidence of physical or verbal threats beyond the usage of profanity). Contrary to the plaintiffs in <u>Forrester</u> and <u>Arpin</u> who were noncompliant with the officer's directives and refused to cooperate, the 2AC never indicates plaintiff attempted to leave the scene, or that she was noncompliant with the officers' directives. (<u>Id.</u>); <u>Forrester</u>, 25 F.3d at 807-8; <u>Arpin</u>, 261 F.3d at 921-22. The 2AC also alleges plaintiff was not being arrested when Officer Calvache grabbed

---

[4] Plaintiff claims she experienced a black out during the altercation and, as such, does not remember the events. Therefore, plaintiff consistently notes that most of her recollection derives from a video recording she was shown by a public defender. (ECF No. 21 at 10-15.)

her arm, a fact which defendants do not seem to dispute. (ECF No. 21 at 13.) Furthermore, there were five officers outside surrounding plaintiff when the alleged force was used. (Id.); see, e.g., Adams v. Kraft, 828 F. Supp. 2d 1090, 1108-9 (N.D. Cal. 2011) ("[T]he severity of the crime is mitigated by the fact that Plaintiff was outnumbered five to one by law enforcement officers at the time of the arrest.").

On balance, the 2AC paints a picture of a claim for excessive force: a compliant victim of a domestic dispute, who posed no threat to anyone's safety, but whose arm was allegedly violently twisted and almost pulled "off of [her] shoulder and body" by an angry Officer Calvache. (ECF No. 21 at 13.) As a result, the 2AC contains enough individualized facts against Officer Calvache to allege an objectively unreasonable use of force under Ninth Circuit precedent; thus, the 2AC is sufficient to state a claim for excessive force under the Fourth Amendment. See Bonilla-Chirinos, 2017 WL 3173004 at *5; see also, e.g., Moore v. Richmond Police Dep't, 497 Fed.Appx. 702, 708 (9th Cir. 2012) ("Where there is no need for force, any force used is constitutionally unreasonable."); Nicholson v. City of Bakersfield, 2011 WL 13240300 1 at *10 (E.D. Cal. Dec. 20, 2011) (even though the officer used minimal force in merely pushing the plaintiff without resulting injuries, the use of force was still unreasonable because plaintiff was neither posing a threat to the officers, evading or resisting arrest, nor was she even being arrested at the time). For these reasons, the Court denies defendants' motion to dismiss plaintiff's Section 1983 excessive force claim against Officer Calvache.

B. The excessive force claim against Officer Calvache fails at summary judgment.

Perhaps recognizing the sufficiency of plaintiff's allegations against Officer Calvache, defendants moved in the alternative for the court to consider Officer Calvache's body-cam footage alongside plaintiff's allegations. Defendants argue the body-cam footage is evidence on which plaintiff's complaint necessarily relies, as plaintiff has continually argued that she blacked out during portions of the encounter and so has had to rely on her view of the footage. (See, e.g., ECF No. 21 at 10.) Thus, defendants argue the court should take judicial notice of the footage and find plaintiff's allegations unsupported. Alternatively, defendants argue the court should resolve this issue on summary judgment. (ECF No. 24.)

Generally, material beyond the pleadings may not be considered in deciding a motion to dismiss, but a court may look to documents on which the complaint necessarily relies, if their authenticity is not contested. See Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013). Plaintiff argues against judicial notice, offering numerous reasons why she believes the court should not consider Officer Calvache's body cam footage on a motion to dismiss. (ECF No. 27.) The core of plaintiff's argument is that she contests the authenticity of the video, and that this video was not the one she viewed with her former public defender (before filing this lawsuit). Plaintiff then submits photos which she purports show bruises on her arms and wrists. (Id. at 19-22.) Plaintiff then asserts the case should proceed to discovery, where she requests the body cam footage from the other officers on the scene, as well as footage from other portions of the day. (Id. at 22.) The court finds this issue—plaintiff's claim of excessive force against Officer Calvache—is best resolved by applying summary judgment standards and resolving the claim under Rule 56. Defendants requested such relief alongside their submission of Officer Calvache's body cam footage, and plaintiff opposed. (ECF Nos. 24, 27.)

The video demonstrates an encounter that differs significantly from plaintiff's description in the 2AC. Plaintiff asserts she was not a threat to the officers or others, but the video clearly shows plaintiff was a threat to her own safety. The video shows the officers calmly responding to multiple of plaintiff's invectives, and after a while she ends up at the railing on the second-floor balcony, near the steps leading down to the parking lot. Plaintiff is clearly in distress, and continually leans backwards over the railing. Officer Calvache is closest to her, and both he and the other officers attempted to coax her away from the railing and into a chair. After plaintiff leaned far backwards over the railing, her hands in the air, Officer Calvache grabbed her arm, brought it behind her back, applied the handcuffs, and escorted her to the chair. He then loosened the cuffs, and the officers continued their conversation with her. (See ECF No. 24-1 and attached exhibit: Officer Calvache's body cam footage.) Plaintiff's 2AC recognizes this context at times, as she continually states she was a victim of a domestic dispute, was "completely out of it," was a "clear 5150," and had "almost fell off the banister several times." (ECF No. 21 at 13; ECF No. 23 at 4.)

Drawing all justifiable inferences from the video in plaintiff's favor, the court assumes that Officer Calvache applied more than minimal force to plaintiff's arm when he grabbed it and applied handcuffs. Anderson, 477 U.S. at 255. However, the Ninth Circuit has long held that "some degree of physical restraint may [be] necessary to prevent [a plaintiff] from injuring [herself]." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1057 (9th Cir. 2003); see also, e.g., Winchester-Sye v. County of Hawaii, 2014 WL 5465308, *7 (D. Haw. Oct. 27, 2014) (finding no constitutional violation where officers utilized "an intermediate level of force" to restrain a plaintiff who was a danger to herself) (citing Gregory v. County of Maui, 523 F.3d 1103, 1107–08 (9th Cir. 2008) (finding the use of force reasonable, where the plaintiff appeared to be in an altered state, was acting in an aggressive manner and refusing to comply with the officers' requests, and where the officers first confronted the plaintiff verbally, and only then attempted to restrain him)).

Under these standards, defendants adequately demonstrated plaintiff's excessive force claim against Officer Calvache lacks supporting evidence. Soremkun, 509 F.3d at 984. Plaintiff's arguments and other evidence fails to demonstrate a genuine issue of material fact on this issue, and so judgment should issue in Officer Calvache's favor on this claim. See, e.g., Porter v. Munoz, 2019 WL 424197, *5 (E.D. Cal. Feb. 4, 2019) (granting summary judgment for defendant officer on excessive force claim where allegations in the complaint were "blatantly contradicted by the video recording") (citing Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")); see also Anderson, 477 U.S. at 249-53 (arguments at summary judgment may not be founded on "the mere existence of a scintilla of evidence" or evidence that is "'merely colorable' or 'is not significantly probative"); Bryant, 289 F.3d at 1167 (arguments at summary judgment may not rest on a party's "conclusory statement [regarding] a genuine issue of material fact, without evidentiary support").

///

///

**II. Plaintiff's Remaining Claims**

On September 22, 2020, plaintiff filed her first amended complaint, asserting Section 1983 claims against the individual officers of the Tracy P.D., as well as state-law claims against those officers, a Monell claim against the department, and a claim for employment discrimination under Title VII. (ECF No. 8.) Defendants moved to dismiss, and the court held a hearing on October 29, 2020. (ECF Nos. 12, 17.) At the hearing, the court discussed federal pleading standards with plaintiff, and attempted to discern the scope of her claims. The court afforded plaintiff the benefit of the doubt on her individual claims against the officers, and recommended leave to amend be granted for those claims. (ECF No. 18.) However, the court found plaintiff had failed to meet a state-imposed deadline for her state-law claims, and found her Monell and Title VII claims to be frivolous, thus requiring dismissal of those claims with prejudice. (Id.) Plaintiff objected, but the district court adopted the undersigned's recommendations in full. (ECF Nos. 19, 20.) Thereafter, plaintiff filed her second amended complaint. (ECF No. 21.)

Setting aside plaintiff's excessive force claim against Officer Calvache, her 2AC suffers from many of the same defects as her first amended complaint. In the findings and recommendations on the 1AC, the court informed plaintiff about federal pleading standards. (ECF No. 18, citing Rule 8(d)(1) and Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").) However, the 2AC continues to rely on a lengthy and rambling narrative full of conclusory statements about the officers' motivations and the Tracy P.D.'s vast conspiracy against her. Twombly, 550 U.S. at 555-57 (holding that to avoid dismissal for failure to state a claim, a complaint must contain more than "naked assertions," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."); Paulsen, 559 F.3d at 1071 (holding that the court need not accept as true "conclusory [factual] allegations that are contradicted by documents referred to in the complaint," or "legal conclusions merely because they are cast in the form of factual allegations"); see also McHenry, 84 F.3d at 1176-78 (a complaint must not contain lengthy introductions, argument, speeches, explanations, stories, griping, and the like). Further, many of her conspiracy claims are tied to plaintiff's allegation of

excessive force against Officer Calvache, which the court has just resolved in defendants' favor. (See Section A, above.) Most problematic, plaintiff attempts to subvert the district court's previous order dismissing the state-law claims by adding the phrase "Section 1983" to each claim when reasserting them. See, e.g., Larson v. Liberty Mut. Fire Ins. Co., 2010 WL 1962942, at *3 (D. Haw. May 13, 2010) (denying leave to amend as futile because, among other reasons, amended claims were the same as previously-dismissed claims) (citing Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

Simply, the undersigned has attempted to construe the 2AC in plaintiff's favor as best as possible, but finds the remaining claims asserted therein fail under Rule 12(b)(6). Further, granting leave to amend would be a futile exercise, given plaintiff's prior inability to concisely state her claims against defendants and provide facts plausibly indicating other claims exist— despite multiple opportunities to do so. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996) (if amendment would be futile, leave to amend need not be given). Plaintiff's opposition briefing and sur-reply does nothing to cure the court's concerns on this matter. Broam, 320 F.3d at 1026 n.2 (noting a court may consider allegations raised in opposition papers in deciding whether to grant leave to amend).

**RECOMMENDATIONS**

It is HEREBY RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (ECF No. 24.) be GRANTED as to plaintiff's excessive force claim against defendant Calvache;
2. Defendants' Motion to Dismiss plaintiff's remaining claims in the second amended complaint (ECF No. 22) be GRANTED; and
3. The Clerk of the Court be directed to enter judgment for defendant Calvache on the excessive force claim, and otherwise be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. Section 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**ORDER**

In light of those recommendations, IT IS ALSO HEREBY ORDERED that all pleading, discovery, and motion practice in this action are stayed pending resolution of the findings and recommendations. With the exception of objections to the findings and recommendations and any non-frivolous motions for emergency relief, the court will not entertain or respond to any motions and other filings until the findings and recommendations are resolved.

Dated: April 29, 2021

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

osbo.1805